IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Civil No. 3:21-cv-00026 |
| Plaintiff, ) | |
| ) | VERIFIED COMPLAINT FOR |
| v. ) | FORFEITURE *IN REM* |
| ) | |
| 2018 DODGE CHARGER HELLCAT ) | |
| SR, VIN: 2C3CDXL9XJH289135, and ) | |
| ) | |
| 2018 POLARIS RZR S 1000, ) | |
| VIN: 3NSVBE992JH214296, ) | |
| ) | |
| Defendants. ) | |

Plaintiff, United States of America hereby files and serves this VERIFIED COMPLAINT IN REM and alleges as follows:

## I.  NATURE OF THE ACTION

1.  This is an action to forfeit and condemn specific property ("Defendant property") to the use and benefit of the United States of America ("Plaintiff") for involvement, as set forth below, in violations of 21 U.S.C. § 846 (attempt and conspiracy), and § 841(a)(1) (Prohibited acts A).

2.  The United States believes the Defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as money or a thing of value furnished or intended to be furnished by a person in exchange for a controlled substance, in violation of subchapter I – Control and Enforcement, of Chapter 13 – Drug Abuse Prevention and Control, and Title 21 – Food and Drugs, of the United States Code, and proceeds traceable to such an exchange, and money used or intended to be used to facilitate any violation of said subchapter.

3. The United States believes one of the Defendant properties is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(4), as a conveyance and vehicle used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances.

## II. DEFENDANTS *IN REM*

4. The Defendant properties are generally described as: a 2018 Dodge Charger Hellcat SR, VIN: 2C3CDXL9XJH289135 and a 2018 POLARIS RZR S 1000, VIN: 3NSVBE992JH214296.

## III. JURISDICTION AND VENUE

5. This Court has jurisdiction over this case, pursuant to 28 U.S.C. Section 1345 (United States as plaintiff), as an action commenced by the United States of America, and pursuant to 28 U.S.C. Section 1355(a) (Fine, penalty, or forfeiture), as an action for forfeiture.

6. This Court has *in rem* jurisdiction and venue over the Defendant property, pursuant to 28 U.S.C. Sections 1355(b) (Fine, penalty, or forfeiture) and 1395(b) (Fine, penalty, or forfeiture), because acts or omissions giving rise to the forfeiture occurred in this district and because the Defendant property was seized from and is located in this district.

## IV. FACTS

7. The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

8. The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

9. Schedule I substances have a high potential for abuse, have no currently accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of these controlled substances under medical supervision. 21 U.S.C. § 812(b)(1)(A) - (C).

10. Only persons registered by the Attorney General of the United States in accordance with rules and regulations promulgated by the Attorney General may legally manufacture or distribute controlled substances. 21 U.S.C. § 822(a), (b).

11. Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute a controlled substance, unless authorized by law to do so. 21 U.S.C. § 841(a)(1).

12. Under the Controlled Substances Act, it is unlawful to conspire with others to violate its prohibitions. 21 U.S.C. § 846.

13. Marijuana is a controlled substance under federal law.

14. It is believed that evidence shows, or after a reasonable opportunity for further investigation and discovery will show, that the Defendant properties are traceable to money furnished or intended to be furnished for a controlled substance, and/or one of the Defendant properties is a vehicle used or intended to be used to transport or facilitate the sale, receipt, possession, or concealment of controlled substances.

15. In approximately January 2011, Sedric Mayes was charged in Scott County with theft in the fourth degree, and burglary, second degree, a Class C felony.

16. In approximately January 2011, Sedric Mayes was charged in Scott County, Iowa with theft, third degree, an aggravated misdemeanor.

17. In approximately January 2011, Sedric Mayes was charged in Scott County, Iowa with burglary, third degree, an aggravated misdemeanor.

18. In approximately April 2012, Sedric Mayes was charged in Scott County, Iowa with a controlled substance violation, an aggravated misdemeanor, and failure to affix a tax stamp, a Class D felony.

19. In approximately June 2015, Sedric Mayes was charged in Scott County, Iowa with forgery and possession of a controlled substance, marijuana, first offense. He pled guilty to the forgery charge, which was a Class D felony.

20. Sedric Mayes' criminal history was not secret to his family and some friends.

21. Since 2015, law enforcement in the Quad Cities area of Iowa have been investigating Sedric Mayes for suspicion of involvement in drug dealing.

22. Sedric Mayes has been identified as a large marijuana distributor in the area.

23. At all times relevant to this events in this case, Sedric Mayes was a dealer of marijuana, for money.

24. It is believed Sedric Mayes used his drug profits for living expenses, and to buy personal property.

25. In approximately June 2020, a U.S. Postal Inspector determined that there were multiple packages, each weighing approximately 20 to 30 pounds, that smelled strongly of raw marijuana, that were being mailed to 1357 West 38th Place, Davenport, Iowa from Las Vegas, Nevada.

26. Nevada is a drug source state for marijuana, much of which comes from Mexico and California.

27. At the time of the investigation, "LC" resided at 1357 West 38th Place, Davenport, Iowa.

28. When conducting surveillance at 1357 West 38th Place, Davenport, Iowa in June 2020, law enforcement repeatedly saw Sedric Mayes driving a 2018 Dodge Charger Hellcat to the residence, as he waited for the United States Postal Service to deliver packages of marijuana to the address.

29. After packages of marijuana were delivered, Sedric Mayes would pick them up, put them in the 2018 Dodge Charger, and drive away.

30. This activity is consistent with that of a drug dealer using the residence of another person as the pick-up point for illegal drugs that he intends to procure and distribute for profit to others.

31. From October 2019 through September 2020, twenty-five (25) parcels weighing a total of 486 pounds were shipped to 1357 West 38th Place, Davenport, Iowa from the same shipping point of origin in Nevada.

32. On September 18, 2020, law enforcement executed a valid state search warrant at 1357 West 38th Place, Davenport, Iowa, looking for evidence of drug-dealing.

33. During the search of 1357 West 38th Place, Davenport, Iowa, law enforcement located six pounds of marijuana in eight packages, packing material, and a vacuum sealer.

34. A vacuum sealer is a device known to be used to seal marijuana inside plastic packaging in order, in part, to try and prevent it from being detected by law enforcement. Vacuum-sealing is a common practice used by drug-dealers to try and prevent law enforcement and other people from detecting the odor of illegal drugs, either emanating from the illegal drugs or from money or other items associated with illegal drugs.

35. Law enforcement also spoke with "LC" about a package they had intercepted which was en route to be delivered to him. He consented for them to open it, and it contained an additional ten packages of marijuana, with an approximately total weight of ten pounds.

36. "LC" said the marijuana being shipped to his apartment was for his "friends," and he smoked marijuana, but did not sell it.

37. Also, on September 18, 2018, law enforcement executed a lawful state search warrant at 708 South Clark Street, Davenport, Iowa, looking for evidence of drug-dealing.

38. Sedric Mayes resided at 708 South Clark Street, Davenport, Iowa, with Rebecca Waterman, and their child. No one else lived there.

39. After entering the premises, law enforcement officers saw Sedric Mayes run upstairs and start flushing marijuana down the toilet.

40. 3.52 grams of marijuana was recovered before it was flushed.

41. Another small amount of marijuana was found.

42. Waterman was interviewed, and stated Sedric Mayes did not work and does not pay her child support.

43. Waterman told police she paid approximately $20,000 toward the 2018 Dodge Charger, and shares it with Sedric Mayes.

44. Waterman said she makes the payments on the vehicle, and her name, and the name of Sedric Mayes' mother, Lavone, is on the title.

45. Waterman, who is approximately 22 years-old with a small child as a dependent, works as a waitress, and is not believed to be the owner of a business or to have a substantial life savings.

46. During the search of 708 South Clark Street, Davenport, Iowa, law enforcement found paperwork for a 2018 Polaris RZR S 1000.

47. The loan taken out for the 2018 Polaris RZR S 1000 had the names of both Sedric Mayes and Waterman on it.

48. Other paperwork for the 2018 Polaris RZR S 1000 showed Waterman paid $15,000 to pay off the vehicle in 2018.

49. Sedric Mayes and Waterman stored the 2018 Polaris RZR S 1000 at his mother's house, but she considers it his.

50. It is believed that Sedric Mayes and Waterman did not have sufficient legitimate income at times pertinent to this matter to pay for their living expenses and purchases, including the 2018 Polaris RZR S 1000.

51. On September 18, 2020, the 2018 Dodge Charger was found at, and seized from, the residence of Lavone Mayes.

52. On September 18, 2020, Lavone Mayes told law enforcement Sedric Mayes had recently purchased a 2019 Dodge Ram, and he was unemployed.

53. Waterman and Lavone Mayes allegedly financed the purchase of the 2018 Dodge Charger in March 2020 through Coast to Coast Auto Sales.

54. In the loan application, Waterman, then 22 years-old, said she resided at 708 South Clark Street, Davenport, Iowa, and had lived there for 10 months.

55. Waterman told the lender financing the sale of the 2018 Dodge Charger that she worked at Zekes Island Café, as a shift manager, and had been employed there for 3 years, with a claimed salary of $35,000. She listed no prior employer.

56. She certified the accuracy of the information provided, and understood any false statements might subject her to criminal penalties.

57. Lavone Mayes also signed the loan application as a co-applicant.

58. Lavone Mayes said she had been employed at Kraft Heinz as an operator for 24 years. She did not describe herself as owning and operating her own business or businesses.

59. Lavone Mayes also certified the accuracy of the information provided, and understood any false statements might subject her to criminal penalties.

60. In 2020, Huntington National Bank lent Waterman and Lavone Mayes approximately $37,873.44 to purchase the vehicle. The sale price was approximately $53,940, with $3,000 cash down and a $20,000 trade-in allowance on a 2016 Chevrolet Camaro Coupe.

61. Huntington National Bank is believed to have a valid security interest in the vehicle, which the Plaintiff does not contest.

62. As part of the loan agreement, Waterman agreed not to use the collateral for any unlawful purpose.

63. As part of the loan agreement, if Waterman becomes in default under its terms, the lender can accelerate the loan and make due all unpaid principal and unpaid interest.

64. Grounds for default include giving false, incomplete, or misleading information on a credit application, or if Waterman and Lavone Mayes or anyone allowed to drive the collateral were arrested for, charged with, or convicted for any violation (other than a minor traffic violation), misdemeanor, or felony involving the collateral in any manner, or if the collateral is subject to seizure.

65. If Waterman or Lavone Mayes break any promises under the agreement, the lender may take possession of the collateral.

66. Law enforcement seized the Defendant 2018 Dodge Charger on or about September 18, 2020, and initiated an administrative forfeiture against it.

67. Huntington National Bank contested the administrative forfeiture of its interest in the Defendant property; however, the government was not seeking to forfeit its secured interest in the Defendant 2018 Dodge Charger as collateral.

68. On or about December 18, 2020, Lavone Mayes filed a claim with the U.S. Drug Enforcement Administration, seeking to contest the administrative forfeiture of the Defendant 2018 Dodge Charger.

69. In her claim, Lavone Mayes claimed she lived at 708 South Clark Street, Davenport, Iowa, and not at 1804 Kirkwood Blvd., Davenport, Iowa, which she listed as her address on the loan application for the Defendant 2018 Dodge Charger.

70. In her claim, Lavone Mayes stated to the federal government her interest in the Defendant 2018 Dodge Charger as follows:

> The vehicle was legally obtained through the course of business in the companies he manages and including his life's savings. The Bank owns the vehicle and claimant is making payments on it. Claimant asserts 50% rights in the property seized.

71. The investigation, including a review of the loan documentation, contradicts the information in this claim, as follows:

a) Lavone Mayes is a female, not a male;

b) The Defendant 2018 Dodge Charger was not purchased in the course of business in companies Lavone Mayes manages;

c) Lavone Mayes did not use life savings to purchase the 2018 Dodge Charger;

d) Lavone Mayes is not making the payments on the 2018 Dodge Charger, which appear to be being made by Waterman;

e) Huntington Bank does not own the Defendant 2018 Dodge Charger, but asserts a security interest in it.

72.   Lavone Mayes attested she had reviewed the claim and its contents were accurate to the best of her knowledge. She also declared under penalty of perjury the information in her claim was correct.

73.   On or about December 18, 2020, Rebecca Waterman filed a claim with the U.S. Drug Enforcement Administration, seeking to contest the administrative forfeiture of the Defendant 2018 Dodge Charger.

74.   In her claim, Rebecca Waterman stated her interest in the Defendant 2018 Dodge Charger:

> The vehicle was legally obtained through the course of business in the companies she manages and including her life's savings. The Bank owns the vehicle and claimant is making payments on it. Claimant asserts 50% rights in the property seized.

75.   The investigation, including a review of the loan documentation, contradicts the information in this claim, as follows:

a)   The Defendant 2018 Dodge Charger was not purchased in the course of business in companies Waterman manages;

b)   Waterman did not use life savings to purchase the 2018 Dodge Charger; and

c)   Huntington Bank does not own the Defendant 2018 Dodge Charger, but asserts a security interest in it.

76.   The claim form advised a false statement or claim may subject a person to criminal prosecution.

77.   Waterman attested she had reviewed the claim and its contents were accurate to the best of her knowledge. She also declared under penalty of perjury the information in her claim was correct.

78.     The totality of the circumstances suggests Waterman and/or Lavone Mayes are straw owners of the 2018 Dodge Charger, and it was purchased for, and used by, Sedric Mayes, who used it as part of a conspiracy to distribute marijuana.

79.     On or about December 18, 2020, Rebecca Waterman filed a claim with the U.S. Drug Enforcement Administration, seeking to contest the administrative forfeiture of the 2018 Polaris RZR S 1000.

80.     In her claim for the 2018 Polaris RZR S 1000, Waterman told the federal government:

> The vehicle was legally obtained through the course of business in the companies she manages and including her life's savings. The Bank owns the vehicle and claimant is making payments on it. Claimant asserts 100% rights in the property seized.

81.     The investigation, including a review of the loan documentation, contradicts the information in this claim, as follows:

   a)   The Defendant 2018 Polaris RZR S 1000 was not purchased in the course of business in companies Waterman manages;

   b)   Waterman did not use life savings to purchase the 2018 Polaris RZR S 1000;

   c)   No bank owns the Defendant 2018 Polaris RZR S 1000;

   d)   Waterman is not making payments on the Defendant 2018 Polaris RZR S 1000; and

   e)   It is believed Waterman does not own 100% of the Defendant 2018 Polaris RZR S 1000, but it is, or was at times relevant to this case, co-owned by Sedric Mayes.

82. Waterman attested she had reviewed the claim and its contents were accurate to the best of her knowledge. She also declared under penalty of perjury the information in her claim was correct.

83. The claim form advised a false statement or claim may subject person to criminal prosecution.

84. Waterman attested she had reviewed the claim and its contents were accurate to the best of her knowledge. She also declared under penalty of perjury the information in her claim was correct.

## V. COUNT ONE
### (FORFEITURE UNDER 21 U.S.C. § 881(a)(6))

85. Plaintiff repeats and realleges each and every allegation set forth above.

86. The United States has reason to believe the Defendant property constitutes moneys or other things of value furnished or intended to be furnished in exchange for a controlled substance, and/or were used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, § 843, and § 846 et seq.

87. As a result of the foregoing, the Defendant property is liable to condemnation and to forfeiture to the United States for its use, in accordance with 21 U.S.C. § 881(a)(6).

## VI. CONCLUSION

WHEREFORE, the plaintiff requests that the Court issue a warrant and summons for the arrest and seizure of the Defendant property; that notice of this action be given to all persons known or thought to have an interest in or right against

the property, that the Defendant property be forfeited to the United States, and that it be awarded its costs and disbursements in this action, and such other and further relief as the Court deems proper and just under the facts and applicable law.

    Respectfully Submitted,

    Richard D. Westphal
    Acting United States Attorney

By: */s/ Craig Peyton Gaumer*
    Craig Peyton Gaumer
    Assistant United States Attorney
    U. S. Courthouse Annex, Suite 286
    110 East Court Avenue
    Des Moines, Iowa 50309
    Tel: (515) 473-9300
    Fax: (515) 473-9292
    Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, , Jay L. Bump, hereby verify and declare under penalty of perjury that I am a Special Agent and that I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as Special Agent with the Drug Enforcement Administration.

Dated: March 12, 2021.

Jay L. Bump, Special Agent
Drug Enforcement Administration